UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MAJ. JAMES LELI As Personal Representative of the Estate of KelliAnn Leli, <br><br> Plaintiff, <br><br> v. <br><br> V2X, INC., <br> VECTRUS SYSTEMS CORPORATION, <br> VECTRUS, INC., <br> ARI TAYLOR, <br><br> Defendants. | Case No. 1:22-cv-02427-TWP-TAB |

**ORDER ON PLAINTIFF'S MOTION FOR REMAND**

This matter is before the Court on a Motion for Remand filed pursuant to 28 U.S.C. §§ 1441, 1442, and 1446 by Plaintiff Major James Leli, as Personal Representative of the Estate of KelliAnn Leli (the "Estate") (Filing No. 14). The Estate initiated this action in state court after Defendant Ari Taylor ("Taylor"), while acting in the scope of his employment for Defendants V2X, Inc., Vectrus Systems Corporation, and Vectrus, Inc. (together, the "Vectrus Defendants"), struck and killed Captain Dr. KelliAnn Leli ("Capt. Leli") (Filing No. 1-2). The Vectrus Defendants removed the case to this Court under 28 U.S.C. § 1442(a)(1), and the Estate contends remand is required. For the following reasons, the Court determines that removal is appropriate and the Estate's Motion for Remand is **denied**.

### I.   BACKGROUND

The Vectrus Defendants are all Indiana corporations (Filing No. 1-2 at ¶¶ 2–4). At the time of the incident giving rise to this suit, the Vectrus Defendants were government contractors for the United States Air Force (Filing No. 1 at ¶ 16). Under their services contract with the Air Force, they provided "personnel, labor, vehicles, supervision, training, tools, equipment, safety

equipment and other items necessary to support" certain installation services for the Air Force at the Al Dhafra Air Base in the United Arab Emirates. *Id.* at 16; *see* (Filing No. 1-4 (services contract)). Those installation services included the delivery of potable water and the provision of forklift support for water delivery (Filing No. 1 at ¶ 19). At all relevant times, Taylor was an employee of the Vectrus Defendants who operated a commercial forklift to deliver water at the Al Dhafra Air Base.

On the morning of November 27, 2020, Capt. Leli was walking at the Al Dhafra Air Base in an area designated for both pedestrian and vehicle traffic (Filing No. 1-2 at ¶ 7). At the same time, Taylor was driving a forklift in the course and scope of his employment for the Vectrus Defendants. *Id.* at ¶ 6–8. Taylor and Capt. Leli were traveling on perpendicular paths, heading toward one another. *Id.* at ¶ 9. However, Taylor did not see or yield to Capt. Leli because he was texting while driving the forklift. *Id.* at ¶ 11, 13–14. Tragically, Taylor struck Capt. Leli and, unaware that he had struck someone, drove over Capt. Leli, killing her. *Id.*

On November 15, 2022, Capt. Leli's husband, Maj. James Leli, as the Personal Representative of her Estate, initiated this action in the Marion (Indiana) Superior Court 2, asserting state law tort claims against Taylor and the Vectrus Defendants. *Id.* At 2. On December 19, 2022, the Vectrus Defendants timely removed this action to federal court asserting federal jurisdiction over the Estate's tort claims pursuant to 28 U.S.C. § 1442(a)(1), commonly referred to as the "Federal Officer Removal Statute" (Filing No. 1 at ¶ 7–8). On January 18, 2023, the Estate filed a motion seeking to remand this action back to the Marion Superior Court 2 (Filing No. 14). The Estate's Motion for Remand is now ripe for the Court's review.[1]

---

[1] Taylor has also filed a Motion to Dismiss for Lack of Jurisdiction (Filing No. 16), but that motion is not ripe for ruling as briefing has not yet concluded.

## II. LEGAL STANDARD

"A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal." 28 U.S.C. § 1446(a). "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Id.* § 1446(b)(1).

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c).

"The party seeking removal bears the burden of proving the grounds for its motion." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180 (7th Cir. 2012) (citing *Shah v. Inter-Continental Hotel Chi. Operating Corp.*, 314 F.3d 278, 280 (7th Cir. 2002); *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997)).

## III. DISCUSSION

The Vectrus Defendants removed this action under the federal officer removal statute, which provides that a civil action "commenced in a State court . . . against or directed to" an officer of the United States "may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending." 28 U.S.C. § 1442(a). The federal officer removal statute requires that a party seeking removal show: (1) it was a "person"; (2) it was "acting under" the United States, its agencies, or its officers; (3) it has been sued "for or relating to any act under color of such office," and (4) it has a colorable federal defense to the plaintiff's claims. *Ruppel*, 701 F.3d at 1180–81.

"Unlike the general removal statute, the federal officer removal statute is to be broadly construed in favor of a federal forum." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 466–67 (3d Cir. 2015) (internal quotation marks omitted). "The Supreme Court's jurisprudence teaches that the policy in favor of federal officer removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'" *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 943 (7th Cir. 2020) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

The Estate does not dispute that the Vectrus Defendants satisfy the first two requirements of the federal officer removal statute. The Estate argues only that the Vectrus Defendants were not acting "under color" of federal authority and that they have no colorable federal defense to the Estate's claims. The Court will address these two arguments in turn.

A.  **Vectrus Defendants Were Acting Under Color of Federal Authority.**

In their Notice of Removal, the Vectrus Defendants contend they were acting "under color" of federal authority because the incident occurred on the Al Dhafra Air Base and, absent their services contract with the Air Force, their employee, Taylor, would not have been operating the forklift that struck Capt. Leli (Filing No. 1 at ¶¶ 24–25). The Estate contends that these allegations are not enough and that the Vectrus Defendants must further demonstrate a "'causal connection, between the charged conduct and asserted official authority.'" (Filing No. 14 at 4 (quoting *Ruppel*, 701 F.3d at 1181). In response, the Vectrus Defendants argue that courts have interpreted the "causal connection" requirement expansively, and that their water delivery services at the Air Base satisfy a the more relaxed "causal connection" test (Filing No. 23).

4

The parties' references to "causal connection" are misplaced. In *Baker v. Atlantic Richfield Co.*, 962 F.3d 937 (7th Cir. 2020),[2] the Seventh Circuit abandoned the "causal connection" test and "join[ed] all the courts of appeals that have replaced causation with connection and expressly adopt[ed] that standard as [its] own." *Id.* at 944. Under the "connection" test, "it is 'sufficient for [defendants] to have shown that their relationship to [the plaintiff] derived solely from their official duties.'" *Id.* (quoting *Willingham*, 395 U.S. at 409). "Simply stated, the [Vectrus Defendants] did not need to allege 'that the complained-of conduct *itself* was at the behest of a federal agency. It is sufficient for the "color of authority" inquiry that the allegations are directed at the relationship' between the [Vectrus Defendants] and the federal government." *Id.* at 945 (emphasis in original) (quoting *Def. Ass'n of Philadelphia*, 790 F.3d at 470).

The *Baker* court explained that a "connection" test is appropriate in light of Congress's 2011 amendments to the federal officer removal act and the Supreme Court's interpretation of the statute:

> Before 2011, removing defendants "were required to demonstrate that the acts for which they were being sued occurred at least in part *because of* what they were asked to do by the Government. In 2011, however, the statute was amended to encompass suits for *or relating to* any act under color of federal office." Since then, three . . . circuits have concluded that, in the Removal Clarification Act, "Congress broadened federal officer removal to actions, not just *causally* connected, but alternatively *connected* or *associated*, with acts under color of federal office." . . . This position better comports with the Supreme Court's decisions, which have never utilized a rigid causation standard for removal. Indeed, long before the Removal Clarification Act of 2011, the Court had opined that 'the statute does not require that the [lawsuit] must be for the very acts which the [defendant] admits to have been done . . . under federal authority. It is enough that [the] acts . . . constitute the basis . . . of the state [lawsuit]."

---

[2] Although the Vectrus Defendants do not cite *Baker*, they correctly argue that a strict "causal connection" test does not apply (Filing No. 23 at 9–10).

5

*Baker*, 962 F.3d at 943–44 (emphasis in original) (quoting *Def. Ass'n of Philadelphia*, 790 F.3d at 471; *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc); *Maryland v. Soper*, 270 U.S. 9, 33 (1926)).

The "connection" test is plainly satisfied here. The Estate alleges that the incident arose during Taylor's performance of water delivery services pursuant to the Vectrus Defendants' services contract with the Air Force. The Estate's relationship to the Vectrus Defendants is therefore derived solely from the performance of their contractual duties owed to the federal government. *Id.* at 944–45 (citing *Isaacson v. Dow Chem. Co.*, 517 F.3d at 137–38 (2d Cir. 2008) ("To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack . . . occurred *while* Defendants were performing their official duties." (emphasis in original)). The Vectrus Defendants are not required to show that the federal government directed the specific conduct that led to the incident, or that any specific conduct taken pursuant to federal direction caused the incident. *See New Hampshire v. 3M Co.*, -- F. Supp. 3d --, No. 22-cv-145, 2023 WL 2691376, at *7 (D.N.H. Mar. 29, 2023) ("The requirement that a claim be 'for' or 'relate to' the alleged federal authority is a 'nexus' requirement, but not a causation requirement." (citing *Moore v. Elec. Boat Corp.*, 25 F.4th 30, 34 & n.2 (1st Cir. 2022))). Whether Taylor's operation of the forklift "'was specifically directed by the federal Government, is one for the federal—not state—courts to answer.'" *Baker*, 962 F.3d at 945 (quoting *Isaacson*, 517 F.3d at 138)). Under *Baker*, it is sufficient for purposes of removal that the incident occurred while Defendants were performing official duties for the Air Force. *Id.*

B.  **Vectrus Defendants Have a Colorable Federal Defense.**

Under the fourth requirement of the federal officer removal statute, the Vectrus Defendants must establish that they have a "colorable" federal defense to the Estate's claims. This requirement "not only satisfies Article III jurisdiction," but also "encapsulates Congress's desire to have federal

6

defenses litigated in federal forums." *Ruppel*, 701 F.3d at 1182 (citing *Mesa v. California*, 489 U.S. 121, 127–34 (1989)). The Vectrus Defendants assert that they have at least three colorable federal defenses to the Estate's claims: the government contractor defense; the combatant activities defense; and the political question doctrine (Filing No. 1 at ¶ 27). The Estate argues none of these defenses have merit.

The Court concludes that at least the combatant activities defense is colorable. The Seventh Circuit has emphasized "that a colorable federal defense under § 1442(a) need only be plausible." *Betzner v. Boeing Co.*, 910 F.3d 1010, 1014 (7th Cir. 2018) (citing *Ruppel*, 701 F.3d at 1181–82). "[T]he standard in assessing removal allegations under § 1442(a) starts with Rule 8(a)'s short and plan statement requirement," so courts will review "allegations in [a] § 1442(a) notice of removal under the federal pleading standards." *Id.* at 1014–15. A federal defense is colorable unless it is "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Latiolais*, 951 F.3d 297.

The Vectrus Defendants contend that the combatant activities defense under the Federal Tort Claims Act ("FTCA") provides a colorable defense to the Estate's claims. The FTCA waives the federal government's sovereign immunity as to certain tort claims but expressly preserves sovereign immunity as to "[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war." 28 U.S.C. § 2680(j). This provision represents Congress's "acknowledgement that war is an inherently ugly business for which tort claims are simply inappropriate." *Ibrahim v. Titan Corp.*, 391 F. Supp. 2d 10, 18 (D.D.C. 2005); *see Saleh v. Titan Corp.*, 580 F.3d 1, 7 (D.C. Cir. 2009) ("[T]he policy embodied by the combatant activities exception is simply the elimination of tort from the battlefield, both to preempt state or

foreign regulation of federal wartime conduct and to free military commanders from the doubts and uncertainties inherent in potential subjection to civil suit.").

Neither the Seventh Circuit nor Supreme Court has had occasion to discuss whether or when the FTCA's combatant activities defense might apply to private government contractors. *See Brokaw v. Boeing Co.*, 137 F. Supp. 3d 1082, 1105–06 (N.D. Ill. 2015) (stating it is still unclear in this circuit whether the "combatant activities" defense is even available to private government contractors). Other circuits have held that the defense does apply to private contractors in certain circumstances. "Replying on the Supreme Court's decision in *Boyle v. United Technologies Corp.*," which established an analytical process for determining when federal law preempts state law, "multiple circuit courts have held that the federal interest inherent in the combatant activities exception conflicts with, and consequently can preempt, tort suits against government contractors when those suits arise out of what those courts viewed as combatant activities." *Burn Pit Litigation*, 744 F.3d 326, 346 (4th Cir. 2014). The D.C. Circuit, Second Circuit, Third and Fourth Circuits, and Ninth Circuit have identified different federal interests inherent in the combatant activities defense and announced different tests for determining when that interest preempts state law tort suits. *See Badilla v. Midwest Air Traffic Control Serv., Inc.*, 8 F.4th 105, 122–130 (2d Cir. 2021) (summarizing Third, Fourth, Ninth, and D.C. Circuit Courts' tests and announcing Second Circuit's test). *But see McMahon v. Presidential Airways, Inc.*, 460 F. Supp. 2d 1315, 1330 (M.D. Fla. 2006) (holding that private, non-employee government contractors may not assert the FTCA's "combatant activities" defense and "are limited to the government contractor defense and *Boyle*'s preemption analysis").

Neither the Notice or Removal nor the parties' briefing on the remand motion articulates any one of these tests, proposes its adoption by this Court, or alternatively proposed the adoption

8

of a new test. At this stage, the Court need not decide precisely what test to adopt or whether the Vectrus Defendants will be successful in asserting the combatant activities defense under any such test. The Court need only decide whether the defense is "colorable". In the absence of binding Seventh Circuit or Supreme Court precedent, this Court could plausibly adopt any one of the tests announced by another federal circuit. Under at least the comparatively lenient tests announced by the D.C. Circuit and the Third and Fourth Circuits, the Vectrus Defendants have plausibly asserted a combatant activities defense.

In *Saleh v. Titan Corp.*, 580 F.3d 1 (D.C. Cir. 2009), the D.C. Circuit held that "the policy embodied by the combatant activities exception is simply the elimination of tort from the battlefield" and "the imposition *per se* of the state or foreign tort law . . . conflicts with the FTCA's policy." *Id.* at 7. The Third and Fourth Circuits more narrowly held that the combatant activities exception was intended "to foreclose state regulation of the military's battlefield conduct and decisions." *Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 480 (3d Cir. 2013); *see Burn Pit Litigation*, 744 F.3d at 349–50. All three circuit courts, however, adopted the same two-part test for determining whether these federal interests conflict with, and thus preempt, state tort law: (1) whether the contractor's actions were integrated into the military's "combatant activities"; and (2) whether its actions were the result of the military's retention of command authority. *See Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458 (3d Cir. 2013). "The first prong . . . ensures that preemption occurs only when battlefield decisions are at issue. And the second prong . . . properly differentiates between the need to insulate the military's battlefield decisions from state regulation and the permissible regulation of harm resulting solely from contractors' actions." *Id.*; *see Aiello v. Kellogg, Brown & Root Servs., Inc.*, 751 F. Supp. 2d 698, 715 (S.D.N.Y. 2011)

9

("Where a contractor is not integrated into military operations and subject to military command, it will not be protected.").

As to the first prong, the Vectrus Defendants allege that they provided potable water delivery services in support of the 380th Air Expeditionary Wing, which is a combat wing of the Air Force engaged in present efforts to eliminate terrorist groups, and they provided those services in the United Arab Emirates, which the federal government has designated as a combat zone (Filing No. 1 at ¶¶ 40–41). The Vectrus Defendants also allege that their services provided necessary logistical support to the Air Force because the water at the Al Dhafra Air Base is not potable (*Id.* at ¶ 41; Filing No. 23 at 13–14). The Estate contends that these allegations are not enough to categorize the Vectrus Defendants' activities as "combatant activities" because the Vectrus Defendants have not shown that a military policy or procedure governs their water delivery services. While this type of showing may be required by some of the stricter tests applying the "combatant activities," it is not necessarily required by the more lenient tests announced by the D.C., Third, and Fourth Circuits.

In an analogous case, *In re KBR, Inc., Burn Pit Litigation* ("*Burn Pit Litigation*"), 744 F.3d 326 (4th Cir. 2014), military personnel brought state law tort claims against military contractors related to the contractors' waste disposal and water treatment practices. *Id.* at 331–32. The Fourth Circuit cited the Ninth Circuit's definition of "combatant activities," which includes "'not only physical violence, but activities both necessary to and in direct connection with actual hostilities,' such as 'supplying ammunition to fighting vessels in a combat area during war." *Id.* at 351. The Fourth Circuit concluded that "[p]erforming waste management and water treatment functions to aid military personal in a combat area is undoubtedly 'necessary to and in direct connection with

10

actual hostilities,'" so the contractors' services constituted "combatant activities" *Id.* at 351 (quoting *Johnson v. United States*, 170 F.2d 767, 770 (9th Cir. 1948)).[3]

The Third Circuit similarly cited the Ninth Circuit's definition of "combatant activities" and held that maintenance of electrical systems on a military base in a warzone constituted "combatant activities" because they were necessary in supporting combat operations. *Harris*, 724 F.3d at 481; *see also Aiello*, 751 F. Supp. 2d at 711–12 (holding maintenance of latrines constituted "combatant activities" because services were "providing basic life support services for active military combatants on a forward operating base"). *But see Johnson*, 170 F.2d at 770 ("Aiding others to swing the sword of battle is certainly a 'combatant activities,' but the act of returning it to a place of safekeeping after all of the fighting is over cannot logically be cataloged as 'combat activity.'"). Here, it is plausible that the Vectrus Defendants' services constituted "combatant activities" because their services provided essential life services—delivery of potable water—to a combat wing of the Air Force and were performed in a combat zone, so the first prong is satisfied.

As to the second prong, the Estate argues that the Vectrus Defendants were not subject to military command because no "military policy, procedure, or discretionary decision of the United States Military [would] suggest it required a forklift driver to drive recklessly while on a cell phone" (Filing No. 14 at 11). The Vectrus Defendants' response brief does not address whether their services were subject to military command. Nevertheless, the Court concludes that the Vectrus Defendants' Notice of Removal sufficiently alleges that they were subject to military command.

---

[3] The *Burn Pit Litigation* court did not determine whether the defendant contractor satisfied the second prong, stating that "although it is evidence that the military controlled [the contractor] to some degree . . . the extent to which [the contractor] was integrated into the military chain of command is unclear. The district court therefor erred in resolving the issue before discovery took place." *Burn Pit Litigation*, 744 F.3d at 326.

11

The Notice of Removal alleges that the Vectrus Defendants were required to "function as an integral team member" of the Air Base and were required to comply with various Air Force instructions, handbooks, pamphlets, manuals, and policy directives (Filing No. 1 at ¶¶ 17, 20). The Vectrus Defendants further allege that the military imposed contractual requirements regarding the selection and training of their personnel. *Id.* at ¶ 36. "The government also required the Vectrus Defendants to deliver water using a forklift, . . . and made forklift operators subject to the military's own requirements to obtain a military driver's license." *Id.* at ¶ 32; *see id.* at ¶ 19. Given the low bar required for asserting a "colorable" federal defense, the preference for broadly construing § 1442(a)(1) in favor of a federal forum, and the Court's plausible adoption of a lenient "combatant activities" test, the Court concludes that the Vectrus Defendants have plausibly alleged that they were subject to military command, satisfying the second prong.

The Estate may ultimately show that the Vectrus Defendants cannot succeed on the combatant activities defense. *See Harris*, 724 F.3d at 481 (denying contractor's motion to dismiss because "the relevant contracts and work orders did not prescribe how KBR was to perform the work required of it . . . [and instead] provided for general requirements or objectives and then gave KBR considerable discretion in deciding how to satisfy them."); *Saleh*, 580 F.3d at 9–10 (reversing order granting summary judgment for contractor regarding combatant activities defense because the contractor's "performance-based statements of work 'describe the work in terms of the required results rather than either "how" the work is to be accomplished or the number of hours to be provided,'" so "by definition, the military could not retain command authority nor operational control over contractors working on that basis"); *Koohi v. United States*, 976 F.2d 1328, 1337 (9th Cir. 1992) (limiting application of § 1442(a) to use of force "directed as a result of authorized military action"); *Badilla*, 8 F.4th 105, 128 (requiring that the military "specifically authorized or

directed the action giving rise to the claim"); *see also Aiello*, 751 F. Supp. 2d at 715 (denying contractor's dispositive motion because contractor's maintenance services were not "integrated into the activities over which the military retained command authority"); *Brokaw*, 137 F. Supp. 3d at 1105–06 (holding contractor did not assert colorable combatant activities defense because its "role was simply to transport cargo. Admittedly, it was carrying military equipment and operating in a war zone, but it was not aiding the military in swinging the 'sword of battle'; in essence, it was helping National Airlines carry the sword for the military's later use. This is not the type of incidental activity that should qualify as 'combatant' for purposes of the FTCA.").

But at this stage, the Vectrus Defendants must only assert a colorable defense, not a "clearly sustainable one." *Ruppel*, 701 F.3d at 1182. "The validity of the defense will present 'complex issues, but the propriety of removal does not depend on the answers.'" *Id.* at 1181 (quoting *Venezia v. Robinson*, 16 F.3d 209, 212 (7th Cir. 1994)). "If defendants had to 'virtually . . . win [their] case before [they] can have it removed,' we would leave nothing for the eventual trial court to decide." *Id.* (alterations and omission in original) (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 431 (1999)). This Court, and not a state court, is the appropriate forum for deciding whether the combatant activities defense applies.

Because the combatant activities defense constitutes at least one colorable federal defense to the Estate's claims, the Court need not consider whether the government contractor defense or political question doctrine are also colorable, so the Court declines to do so at this time.

### IV.  CONCLUSION

For the reasons explained above, the Estate's Motion for Remand (Filing No. 14) is **DENIED**.

**SO ORDERED**.

Date:  5/16/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Conor M Kelly
WALKUP, MELODIA, KELLY & SCHOENBERGER
ckelly@walkuplawoffice.com

Michael A. Kelly
WALKUP, MELODIA, KELLY & SCHOENBERGER
mkelly@walkuplawoffice.com

Nicholas Calvin Deets
HOVDE DASSOW & DEETS LLC
ndeets@hovdelaw.com

Andrew David Dettmer
DINSMORE & SHOHL LLP - Indianapolis
andrew.dettmer@dinsmore.com

Christopher D. Lee
DINSMORE & SHOHL
Christopher.Lee@Dinsmore.com

Barath Shankar Raman
LEWIS WAGNER, LLP
braman@lewiswagner.com

Edmund Leonard Abel
LEWIS WAGNER, LLP
eabel@lewiswagner.com